

## LIETUVOS RESPUBLIKOS GENERALINĖ PROKURATŪRA
### PROSECUTOR GENERAL'S OFFICE OF THE REPUBLIC OF LITHUANIA

Ms.Mary Ellen Warlow,  
Director of International Affairs Division of  
Department of Justice  
the United States of America

17 November 2004  
Our ref. No.: 14.2.-4030/14.5.-491)  
/Please quote when responding/

RE: REQUEST FOR LEGAL ASSISTANCE IN CRIMINAL CASE NO. 07-1-505-04

Dear Ms.Mary Ellen Warlow,

The Prosecutor General's Office of the Republic of Lithuania pays its compliments to your office and, following the Treaty on Mutual Legal Assistance in Criminal Matters Between the Governments of the United States of America and the Republic of Lithuania, requests for legal assistance in the following matter.

The Department of Organised Crimes and Corruption Investigation of the Prosecutor General's Office of the Republic of Lithuania has commenced a pre-trial investigation of the criminal case No. 07-1-505-04, instituted further to Paragraph 2, Article 182; Paragraph 2, Article 184; Paragraph 1, Article 203; Article 216; Paragraph 1, Article 220 and Article 222 in connection with a large scale fraud, an embezzlement of property of high value, an illegal activity of the enterprise, a legitimisation of person's money or property acquired in a criminal way, a provision of false information about income, profit or other property, and fraudulent accounting (the investigation is conducted by a prosecutor, Zdzislav Tuliševski, tel.: +370 5 266 24 15, fax: +3705 266 24 38, e-mail: *tulisez@lrgp.lt*).

*Article 182 of the Criminal Code of the Republic of Lithuania. Fraud.*

1. Any person who, for his own or other's benefits, appropriates or gains a right to the property of another person by false pretences, evades or eliminates property related liability,
    shall be punished by community service, or restriction of liberty, or detention, or imprisonment for a term of up to 3 years.
2. Any person who, for his own or other's benefits, by false pretences, appropriates or gains a right to the property of high value belonging to another person, evades or eliminates a property related liability of the same value,
    shall be punished by imprisonment for a term of up to 8 years.
    (The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

*Article 184 of the Criminal Code of the Republic of Lithuania. Embezzlemnet of Property*

1. Any person who embezzles property or a property right belonging to another person that was entrusted to him or left in his care,
    shall be punished by community service, or a fine, or restriction of liberty, or imprisonment for a term of up to 2 years.
2. Any person who embezzles property of high value or a property right belonging to another person that was entrusted to him or left in his care,
    shall be punished by imprisonment for a term of up to 7 years.
    (The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

*Paragraph 1, Article 203 of the Criminal Code of the Republic of Lithuania. Illegal Activity of an Enterprise*

Any person who manages an enterprise for an activity not specified in its founding documents, where this activity is being carried out on a large scale,
shall be punished by a fine, or restriction of liberty, or imprisonment for a term of up to 1 year.
(The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

*Paragraph 1, Article 216 of the Criminal Code of the Republic of Lithuania. Legitimisation of Person's Money or Property Acquired in a Criminal Way*

1. Any person who carries out financial operations with property or money or a part of them, acquired in a criminal way, uses them to make contracts or in economic or commercial activity, or makes a fraudulent declaration that they are gained from legal activity, for the purposes of concealing or legitimising these proceedings
shall be punished by imprisonment for a term of up to 7 years.
(The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

*Paragraph 1, Article 220 of the Criminal Code of the Republic of Lithuania. False Statement about Income, Profit or Property*

1. Any person who, for the purpose of evading payment of taxes, records false data in the income statement or the approved according to established order statement form or other document about his own income, profit or property or that of his enterprise or the use of this income, and files these with an appropriate state institution,
shall be punished by deprivation of the right to work in a certain job or perform certain activities, or a fine, or restriction of liberty, or imprisonment for a term of up to 3 years.
(The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

*Paragraph 1, Article 222 of the Criminal Code of the Republic of Lithuania. Fraudulent Accounting*

1. Any person who fraudulently manages an enterprise's accounts or conceals, destroys or damages accounting records where this makes it impossible to ascertain, in full or in part, the conduct of business at the enterprise, its economic, commercial and financial position, its results, or an evaluation of its assets,
shall be punished by a fine, or detention, or imprisonment for a term of up to 4 years.
(The edition No. VIII-1968 of the 26 September 2000 Act of the Republic of Lithuania)

During the pre-trial investigation in the criminal case No. 07-1-505-04 it was established that, having carried out the search in the director's, Arūnas Mačiuitis, office of private company of limited liability (hereinafter UAB) "Rubicon", registered at the address: 12 Meistrų Str., Vilnius City, a laptop, an optical disc and other things and documents were found and seized. Having analysed the information in the laptop, the optical disk and other documents, it was stated that they contain the entries about various financial operations in the period between 1 January 2000 and 16 January 2004, i.e. an unofficial accounting of the group of enterprises "Rubicon". This information gave valid grounds to assume that the group of enterprises "Rubicon" was managed for an activity not specified in its founding documents and illegal financial operations were carried out for the purpose of concealing and legitimising money acquired in a criminal way, using those money for financial operations to gain new property or other services (money laundering), as well as embezzling this property or the right to this property. It is suspected that in order to legalise the acquired property or money belonging to another person, the fraudulent accounting of the enterprises was managed, concealing it and in such a way acquiring undeclared free of charge income that was later used for satisfying the interests of the group, as well as bribing public servants for a desired result or decision.

3

The suspicions of the fraudulent activity of the group of enterprises "Rubicon" were confirmed by the information obtained from the registered and operating banks and credit institutions of the Republic of Lithuania. During the pre-trial investigation the financial operations, carried out via bank accounts during the period of 1 January 2001 and 1 February 2004 of the group of enterprises "Rubicon" consisting of UAB "Rubicon", UAB "Rubicon apskaitos sistemos", UAB "Verslo plėtros ir administravimo agentūra", UAB "Ogmios astra pramogų centras", UAB "Arkoveta", UAB "Strėmuva", UAB "Rubicon Prodimpeksas", UAB "Forma", UAB "Movestas", UAB "Profista" and UAB "Koris", were examined. It was ascertained that the enterprises of "Rubicon" group, in order to evade paying compulsory duties, have made various fake contracts (for granting a loan, consultation, marketing, intermediation and etc.) with the offshore companies (established by themselves) "Alma Industrial LLC", "Chine Consultants Limited", "Magdeburg Holding LLC", "Timber Production LLC", "Stonell LLC", "Gategroup Solutions LLC", "Balecraft Limited", "Consultwest LLC", as well as with the firms, registered in the Republic of Estonia, "Heatman OU", "Mecrest OU", "Taxivator", "BNA Ergo", and with the firm, registered in the Republic of Latvia, "Sia Alfa Laval". Covering with the implementation of the aforementioned contracts, the group of enterprises "Rubicon" has been carrying out illegal financial operations via the accounts in the banks of these companies and firms.

During the pre-trial investigation it was established that the accounts, in the registered and operating banks of the Republic of Latvia, of the offshore companies have been used for the illegal financial operations. The banks are the following: OGRES KOMERCBANK, PAREX BANKA, RIETUMU BANKA, and NORDEA BANK. According to the information obtained the offshore company "**Alma Industrial LLC**" (a representative or director - Mr. Robert Pavlovskis) holds an account No. ▮▮▮▮▮▮ OGRES KOMERCBANKA, Riga, SWFT OKBALV22, the offshore company "**Chine Consultants Limited**" (a representative- Mr. G. I. K. Arkell) holds an account No. ▮▮▮▮▮▮ RIETUMU BANKA, 7 Vesetas Str., Riga, the offshore company "**Magdeburg Holding LLC**" (an authorised representative- Mr. Alexander Geifman) holds and account No. ▮▮▮▮▮▮ OGRES KOMERCBANKA, Riga, SWFT OKBALV22, the offshore company "**Timber Production LLC**" (a director- Mr. Robert Pavlovskis) holds an account No. ▮▮▮▮▮▮ OGRES KOMERCBANKA, Riga, SWFT OKBALV22, the offshore company "**Stonell LLC**" (a representative or director - Mr. Olivier Pierre Jacqout) holds an account No. ▮▮▮▮▮▮ PAREX BANKA, 3 Smilshu Str., Riga, SWIFT: PARXLV22, the firm "**Sia Alfa Laval**" (a director- Ms. Linda Sirsnina) holds an account No. ▮▮▮▮▮▮ Nordea Bank Finland, PJC Latvia Branch and the offshore company "**Consultwest LLC**" holds an account No. ▮▮▮▮▮▮ RIETUMIT BANKA, Riga, Swift: RTMBLV2X.

It was also ascertained that the company "Alma Industrial LLC" is registered at the address 942 Windemere Dr. NW Salem, Oregon 97304-2722, USA (a representative or director - Mr. Robert Pavlovskis); "Magdeburg Holding LLC" is registered at the address: 517 South Highland Drive, Mustang, Oklahoma, USA (a representative or director - Mr. Alexander Geifman); "Timber Production LLC" (a representative or director - Mr. Robert Pavlovskis) is registered at the address: 15 East North Str., Dover, Delaware, USA; "Stonell LLC" (a representative or director - Mr. Olivier Pierre Jacqout) is registered at the address: 1500 Hub Tower, 699 Walnut, Des Moines, Iowa 50309, USA; "Gategroup Co (or LLC)" is registered at the address: 25 Greystone Manor, Lewes, DE 19958-9776, USA (a representative or director Eugenijus Bytautas); "Consultwest LLC is registered at the address: 613 s.w. 112 TH, Oklahoma 73170, USA.

The officials, who are carrying out the pre-trial investigation, have several questions in respect of the material collected in this criminal case, and the clarification of which may be relevant to the disposition of the criminal case investigation. We hope that the answers to these questions could be got in the Unites States of America. Therefore, we kindly ask you to commission the competent officers in the USA to execute the following procedural actions.

1. To interrogate as witnesses the promoters, representatives and the heads of the following enterprises: "Alma Industrial LLC" (registered at the address 942 Windemere Dr. NW Salem, Oregon 97304-2722, USA); "Magdeburg Holding LLC" (registered at the address: 517 South Highland Drive, Mustang, Oklahoma, USA), "Timber Production LLC" (registered at the address: 15 East North Str., Dover, Delaware, USA, "Stonell LLC" (registered at the address: 1500 Hub Tower, 699 Walnut, Des

4

Moines, Iowa 50309, USA, "Gategroup Co (or LLC)"(registered at the address: 25 Greystone Manor, Lewes, DE 19958-9776, USA) and "Consultwest LLC (registered at the address: 613 s.w. 112 TH, Oklahoma 73170, USA), and ask the questions indicated below:

1.1. When and for what purpose was the enterprise established?

1.2. Who are the firm promoters and who are the proprietors of the firm shares and what parts of shares they own?

1.3. What activities is the enterprise involved in, and how many employees work in the firm?

1.4. Who, when, under what circumstances have become the heads or legal representatives of the enterprises? Who, when, under what circumstances has appointed those persons as the heads or representatives of the enterprises, Robert Pavlovskis of the enterprise "Alma Industrial LLC"; Aleksandr Geifman of " Magdeburg Holding LLC"; Robert Pavlovskis of "Timber Production LLC"; Olivier Pierre Jacqout of "Stonell LLC" and Eugenijus Bytautas of "Gategroup Solutions Co (or LLC)" respectively?

1.5. Has the enterprise made any contracts with the companies registered in the Republic of Lithuania, namely, with UAB "Rubicon", UAB "Rubicon apskaitos sistemos", UAB "Verslo plėtros ir administravimo agentūra", UAB "Ogmios astra pramogų centras", UAB "Arkoveta", UAB "Strėmuva", UAB "Rubicon Prodimpeksas", UAB "Forma", UAB "Movestas", UAB "Profista" and UAB "Koris" in the period of 2001-2004? If has, then when, on which part's initiative, where and under what circumstances, and what contract (contract No., object, liability of the parts, dates, payments) it has made and signed and with what enterprises and firms?

1.6. Has the enterprise made any contracts with the companies registered in the Republic of Estonia, namely, "Heatman OU", "Mecrest OU", "Taxivator" and "BNA ERGO" in the period of 2001-2004? If has, then when, on which part's initiative, where and under what circumstances, and what contract (contract No., object, liability of the parts, dates, payments) it has made and signed and with what enterprises and firms?

1.7. Has the enterprise made any contracts with the offshore companies, namely, with "Alma Industrial LLC", "Chine Consultants Limited", "Magdeburg Holding LLC", "Timber Production LLC", "Stonell LLC", "Gategroup Solutions LLC", Consultwest LLC" and "Balecraft Limited"? "If has, then when, on which part's initiative, where and under what circumstances, and what contract (contract No., object, liability of the parts, dates, payments) has it made and signed and with what enterprises and firms?

1.8. Have these contracts been implemented and settlements according them made? If have, then when, what exact services and works have been done, who concretely and in what manner (form) have done them, and in what way payments have been settled?

1.9. Who from the enterprise employees and with whom, what employees concretely from the aforementioned enterprises of the group "Rubicon", the enterprises of the Republic of Estonia and the offshore companies have communicated while drafting, signing and implementing contracts and in accordance with them settling the accounts?

1.10. Are they acquainted with the following citizens of the Republic of Lithuania: Andrius Janukonis, Arūnas Mačiuitis, Darius Leščinskas, Rimantas Bukauskas, Linas Samuolis, Valdas Jankauskas, Gintautas Jaugielavičius, Remigijus Lapinskas, Gediminas Globys, Igoris Leontjevas, Jurgita Ačaitė, Rita Putriutė; with the following citizens of the Republic of Estonia: Arne Raam, Janina Karemae, as well as with Robert Pavlovskis, G. I. K. Arkell, Olivier Pierre Jacqout, Alexander Geifman. If yes, then when and who introduced them to each other; do they keep in touch with them, with whom exactly and what contacts? Do they know what activities they are engaged in and what firms have they established? Have they made any contracts with the named persons or their established firms? Have the contracts been implemented, when and in what manner the contracts have been implemented?

1.11. What e-mail address have they been using in the period of 2001-2004? Have they contacted with A. Mačiuitis by e-mail? If yes, have they received any directions or requests by mail from A. Mačiuitis to settle payments and sign the documents delivered by e-mail? Have they forward the aforementioned signed documents back to A. Mačiuitis?

If your country's legislation does not forbid it, before interrogating a witness, please explain to the witness his duty to tell everything what he knows in a true way; also, that he will have to approve his testimony by signature. In an analogous situation in Lithuania, while interrogating a witness, s/he is warned about criminal liability for providing false testimony and then a record of the examination of the witness is made. The witness gives his/her testimony and an official records it. Having finished the

5

interrogation, the witness makes him/herself familiar with testimony and signs below it. The official signs below the signature of the witness.

2. To exact the true copies of founding documents, as well as the documents confirming the appointment of the heads and legal representatives of the aforementioned enterprises. To exact the true copies of the contracts with the enterprises of the Republic of Lithuania, the Republic of Estonia, the Republic of Latvia and the offshore companies, which were mentioned in the questions above, those contracts supporting documents (annexes and etc.), documents confirming the services done (work or service acceptance-transmission deeds and etc.) as well as the documents confirming the payments for the provided services.

We guarantee that all evidence collected in the United States of America will be used exclusively for the purposes of the investigation of the criminal case and its judicial proceedings.

We hope that our Request for Legal Assistance will be executed and express our deep gratitude for co-operation in advance. We are ready to provide you with analogous or other legal assistance.

We kindly ask you to forward your answer and collected information to the Prosecutor General's Office of the Republic of Lithuania, at the address: 4 A. Smetonos Str., 01515 Vilnius, the Republic of Lithuania, quoting our reference number and the date of this request in your response.

Yours faithfully,

Deputy Chief Prosecutor                                                           Vaida Urmonaitė

By: R Požarskienė, prosecutor, tel. No.: +370 5 266 23 54
Translated from Lithuanian by Ms. Rūta Žižytė, a translator of the Prosecutor General's Office of the Republic of Lithuania, who has been warned about the criminal liability for making a false or deliberately misleading translation.